**FILED**

OCT 2 6 2011

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

**BETTY CLAYTON**
16888 Piney Point Road
P.O. Box 52
Piney Point, Maryland 20674

    *Plaintiff,*

      v.

**DISTRICT OF COLUMBIA**
1350 Pennsylvania Avenue, NW
Washington, DC 20004

    <u>Serve</u>: Irvin B. Nathan, Esq.
        Office of the Attorney General
        for the District of Columbia
        441 4th Street, NW
        Washington, DC 20001

and

**DISTRICT OF COLUMBIA NATIONAL
GUARD**
2001 East Capital St, SE
Washington, DC 20003

    <u>Serve</u>: Col. Victor Tall, Esq.
        Judge Advocate General (JAG)
        District of Columbia National Guard
        2001 East Capital St, SE
        Washington DC 20003

    *Defendants.*

Case: 1:11-cv-01889
Assigned To : Roberts, Richard W.
Assign. Date : 10/26/2011
Description: General Civil

## <u>JURY TRIAL DEMANDED</u>

## <u>COMPLAINT AND JURY DEMAND</u>

    COMES NOW PLAINTIFF, Betty Clayton, by and through undersigned counsel, and

respectfully files this civil action against the above captioned Defendants and as cause states:

1.    Ms. Clayton currently maintains an address of 16888 Piney Point Road, P.O. Box 52,

Piney Point, Maryland 20674.

2.     Defendant District of Columbia maintains addresses of 1350 Pennsylvania Avenue, NW, Washington, DC 20004.

3.     Defendant District of Columbia National Guard ("DCNG") maintains addresses of 2001 East Capital St, SE, Washington, DC 20003

4.

## JURISDICTION AND VENUE

5.     Jurisdiction in this case is based upon 28 U.S.C. §§1332 and 28 U.S.C. §1367, as to supplemental jurisdiction over the pendent state law claims. Venue in this case is based upon 28 U.S.C. §1343(a)(3) and 28 U.S.C. § 1391, as the incidents which give rise to this case occurred in the District of Columbia and the defendants are located in the District of Columbia.  Plaintiff has timely filed notice upon the defendants consistent with D.C. Code § 12-309.

## FACTS

6.     Ms. Clayton was appointed to the Career Service position as Director of D.C. Government Operations of the District of Columbia National Guard.  Ms. Clayton's business address at that time was 2001 East Capitol Street, Washington, DC 20003-1719.

7.     As the Director of D.C. Government Operations of the District of Columbia National Guard ("DCNG"), Ms. Clayton was under an obligation and duty to investigate and discipline potential wrongdoing at the DCNG as well as report fraud, waste and abuse.

8.     As a result of reporting and attempting to curb incidences of fraud, waste and abuse, Ms. Clayton was terminated from employment by the District of Columbia and the District of Columbia National Guard.

**Reporting Sexual Harassment**

9.      Tamera Jones, administrative assistant to Major General Errol R. Schwartz, Commanding

General of the DCNG, made a sexual harassment complaint to Ms. Clayton against General

Schwartz.

10.      On or about April 10, 2010, Msgt. Dwight Martin, the DCNG federal EEOC officer

asked Ms. Clayton, in her office, whether "General Schwartz' administrative assistant had

informed Ms. Clayton that she had filed sexual harassment charges against [General Schwartz]."

11.      Msgt. Martin further stated that "he, the General, Col. Tall [federal JAG] and Forrest

[federal JAG] and the federal IG [Col. Dickens], had been huddled in the General's office most

of the day, trying to determine who the administrative assistant had informed of the filing since

she refused to discuss the issue with the federal EEO officer."

12.      Ms. Clayton was then pressured by the investigators to not file or report the sexual

harassment allegations made by Ms. Jones.

13.      However, as the agency head, Ms. Clayton was under a duty and obligation to assist in

the EEO sexual harassment matter.  Ms. Clayton provided aid and assistance to Ms. Jones in the

sexual harassment matter.  When Ms. Clayton learned of the alleged sexual harassment, she

reported the administrative assistant's disclosure to Ms. Linda Brown, the District of Columbia

Human Resources EEO officer that same day in mid-April.

14.      Shortly after in or about mid-April 2010 in Ms. Clayton's office, Ms. Clayton reported

the sexual harassment noted above to the EEO, as well as at least one other by federal and/or

District of Columbia DCNG employees, General Schwartz verbally threatened Ms. Clayton's

employment.

15.     Specifically, General Schwartz stated during that meeting, "we'll see who's sitting in that seat on October 1st."

16.     Shortly after this threat was made, Ms. Clayton informed a supervisor, General Kenny Ricket, of General Schwartz's threat to terminate her for participating in protected EEO activity by relaying Ms. Jones's allegations.

**Reporting Violations of Charlotte Clipper and Attempts to Discipline**

17.     Ms. Charlotte Clipper, the Human Resources Supervisor and District of Columbia employee, engaged in behavior that was inappropriate and against policy on numerous occasions.

18.     Ms. Clayton, as the Director of DCNG, reported and took action to stop Ms. Clipper's inappropriate and incorrect conduct for those violations but was retaliated against by the defendants as a result.

19.     By way of example, but not limitation, Ms. Clayton reported that Ms. Clipper worked closely with Mr. Anthony Devassey, the previous Director of DCNG, and his attorneys *after* he was relieved of his duties as Director of DCNG, so that he could somehow receive a work visa.

20.     Mr. Devassey was terminated in May of 2008.  However, using DCNG time and resources, Ms. Clipper worked extensively for Mr. Devassey and made incorrect statements on his applications to the United States Department of Immigration and the United States Department of Labor.

21.     Ms. Clipper communicated with Mr. Devassey's attorneys to obtain their advice regarding how to eliminate applications from persons applying to be the Director of DCNG.

22.     Although Ms. Clayton was qualified for the position of Director of the DCNG, Mr. Devassey's attorneys informed Ms. Clipper that Ms. Clayton was not qualified for the position, which was later incorrectly communicated to the defendants.

4

23.     On October 1, 2009, the DCNG was improperly billed for the services of Mr. Devassey's personal attorneys.

24.     Upon information and belief, Ms. Clipper used a DCNG district travel credit card to illegally pay for Mr. Devassey's attorney bill regarding his United States Visa renewal.

25.     Ms. Clipper, who was in charge of payroll for DCNG, had received two promotions within three months, a violation of D.C. personnel policy.

26.     Ms. Clipper was being paid in the DS-12 salary range as a supervisor – although she was not entitled to that pay grade under applicable procedure.

27.     Moreover, Ms. Clayton disclosed that Ms. Clipper had promoted herself, inappropriately removed paychecks from the DCNG building, inappropriately processed locality pay for herself, wrote her own performance evaluation for an incentive award, and used her position as a payroll processor to intimidate other employees into not report errors in paycheck, payroll and leave balance.

28.     Ms. Clipper further failed to ensure that District of Columbia and federal funds were not misappropriated or used in an inappropriate manner.

29.     Ms. Clayton reported Ms. Clipper to defendants for these instances of fraud, waste and abuse.

30.     Related to the above-conduct, Ms. Clayton suspended Ms. Clipper for five days for improperly taking DCNG checks home with her.

31.     On or about August 12 – 28, 2008, the DCNG Judge Advocate General's staff, Col. Victor Tall and Col. James Forrest, repeatedly attempted to delay Ms. Clayton from reporting these allegations of wrongdoing to the District of Columbia Inspector General's Office through instruction and otherwise.

32.     Colonel Tall and Colonel Forrest, on behalf of General Schwartz, continuously attempted to block all proposed disciplinary action against Ms. Clipper, despite that fact that Ms. Clipper engaged in improper behavior.  By way of example, Ms. Clayton was aggressively met with undue command influence and threats of potential repercussions if she continued to investigate these matters.

33.     Despite efforts to deter her from doing so, Ms. Clayton reported Ms. Clipper's actions to the District of Columbia Inspector General on or about August 27, 2008.

34.     The D.C. Inspector General's subsequently launched an investigation into Ms. Clipper's actions that substantiated Ms. Clayton's allegations.

35.     Ms. Clayton then reassigned Ms. Clipper, and later, in or about July and August 2010, Ms. Clayton attempted to have Ms. Clipper terminated from her employment with DCNG.

36.     However, Ms. Clipper had garnered wide support from upper management and specifically from General Schwartz.

37.     Ms. Clipper was involved with roughly 90% of the funds disbursed by the local agency through payroll and human resources.

38.     Ms. Clipper had worked at DCNG for over thirty years and had apparently amassed a great amount of embarrassing and potentially harmful information related to DCNG and General Schwartz.

39.     When Ms. Clayton suspended Ms. Clipper, she threatened to embarrass General Schwartz by stating that she had damaging information on General Schwartz and others within the agency.

40.     As a result of Ms. Clayton's attempts to ensure that DCNG funds were used in an appropriate fashion, and that fraud, waste, and abuse be eliminated in the DCNG, Ms. Clayton was retaliated against and met with adverse employment actions.

**Reporting Misappropriation of Funds and Fraud, Waste, and Abuse**

41.     In December 2009, Ms. Clayton learned of and reported that annual leave for Ms. Clipper

and Ms. Pelham, a budget specialist, were restored.

42.     In or about September 2008, General Schwartz requested that Ms. Clayton approve

incentive awards for certain District of Columbia employees for the fiscal year prior to Ms.

Clayton's arrival at DCNG.

43.     These staff members, including Ms. Clipper, were permitted to write their own

performance evaluations, which, incidentally, were the three largest awards proposed.

44.     Upon inspection, however, Ms. Clayton learned that Col. Essie Thomas, a United States

Property and Fiscal Office officer, approved their awards even though he had not supervised

them during their evaluation period.

45.     General Schwartz personally and repeatedly attempted to persuade Ms. Clayton to

overlook this procedure and release the incentive awards funds.

46.     Ms. Clayton, however, refused to release those funds to the employees and reported this

to the District of Columbia Office of the Inspector General and District of Columbia CFO.

47.     In another instance, Ms. Clayton reported that funds for a District of Columbia bus

contract were inappropriately steered to a D.C. minority-based company without bid.

48.     Ms. Clayton reported the inappropriate co-mingling of DCNG youth leader camp

501(c)(3) funds and District of Columbia local funds prior to 2009.

49.     Ms. Clayton reported employee federal and local tax withholdings of a federal security

guard contract that were not disclosed to the treasury.

50.     Prior to 2009, District of Columbia credit cards were not canceled when employees left

the DCNG.  Also, credit cards were being used within fifty miles of the worksite in violation of

the DCNG procurement policy. In fact, one credit card was secured in the name of a secretary –

although that secretary was ordered to immediately return it to the procurement officer.

51.     Ms. Clayton suspected that personnel in other District of Columbia agencies, including

the DC Office of the Chief Financial Officer, the DC Office of Contracting and Procurement, the

DC Department of Human Resources, and the DCNG were aware of or otherwise in involved in

fraud, waste, abuse, and inappropriate use of funds related to DCNG credit cards.

52.     Ms. Clayton reported these incidents of District of Columbia credit card violations to the

District of Columbia Office of the Inspector General.

53.     Ms. Clayton also uncovered and reported various furniture and equipment purchases in

excess of $250,000 purchased in FY 2007. Those purchases were neither inventoried nor listed

on the District of Columbia inventory control list until it came to Ms. Clayton's attention in

2010. This was contrary to established procedures.

**Other Violations**

54.     Ms. Clayton reported numerous other instances of apparently unlawful and inappropriate

action. By way of example, Ms. Clayton reported that in September 2009 DCNG created federal

positions based on District of Columbia specific skills for the purpose of transferring two

employees from the District of Columbia budget to the federal budget. Ms. Clayton reported

potential United States security risks to General Schwartz. She explained that Mr. Devassey had

ordered and saved certain military research – and showed him her concerns – but General

Schwarz simply wiped his fingerprints from the publication and handed the information back to

Ms. Clayton without comment.

55.     The above is a sampling of the fraud, waste, abuse, and misappropriation of funds related

to the DCNG. Ms. Clayton, the former agency head, reported these instances in an appropriate

and lawful manner. Ms. Clayton's job performance was excellent and her performance

evaluations indicated that her performance outstanding and "significantly exceed[ed]

expectations." However, Ms. Clayton's employment was terminated for undertaking the actions

enumerated herein and other similar actions.

**Illegal Termination of Plaintiff**

56.     On September 27, 2010 the District of Columbia Human Resources Office informed Ms.

Clayton that, effective October 10, 2010, it was converting her position from Career Service to

Management Supervisor Service pursuant to D.C. Code § 1-609.58(a), attempting to deprive her

of her status as a career employee.

57.     On October 26, 2010, the City Administrator, Neal Albert, mailed a notice of termination

to Ms. Clayton, effective November 10, 2010.

58.     Ms. Clayton's termination is in violation of the United States Constitution, Federal law,

and District of Columbia law. District of Columbia law violated here includes, but is not limited

to the whistleblower protections provided in D.C. Code § 1-615.51, *et seq.*, D.C. Human Rights

Law provided in D.C. Code § 2-1401.01, *et seq.*, unlawful retaliation, and common law unlawful

discharge in violation of public policy. Also, the forced change in Ms. Clayton's position from

career services to management supervisory, albeit through D.C. Code § 1-609.58(a) is

unconstitutional, revoked Ms. Clayton's property rights, and deprived her of due process.

59.     Moreover, the City Administrator was without authority to terminate Ms. Clayton. D.C.

Personnel Regulations § 3813.2 provides that "[n]o termination action shall be initiated under

this chapter unless first authorized by the agency head (or designee) and the Director, D.C.

Department of Human Resources (DCHR), or independent personnel authority, as applicable."

Ms. Clayton, as the agency head of DCNG most certainly did not authorize her termination from

employment. Also, the D.C. Department of Human Resources did not authorize her termination. That was done by the Office of the City Administrator – an agency without authority to take this action.

**COUNT I**

**(Retaliation pursuant to the D.C. Whistle Blower Protection Act)**

60.     Plaintiff adopts and incorporates by reference the foregoing paragraphs as if they were fully set forth herein.

61.     Plaintiff made protected disclosures regarding instances Plaintiff reasonably believed constituted mismanagement, waste of public resources or funds, abuse of authority in connection with the administration of a public program, violations of federal, state and local law, rules, and regulations.

62.     Plaintiff refused to take illegal orders when she refused to refrain from reporting sexual harassment, waste, abuse, and fraud.

63.     Defendant and its agents threatened to take, and then took, prohibited personnel actions, in violation of the Whistleblower Protection Act, D.C. Code § 1-615.51 *et seq.*, against Plaintiff as a result of her protected disclosures and her refusal to take illegal orders, including but not limited to threatening termination, demoting her to a non-career employee, and ultimately terminating her.

64.     As a consequence of Defendants' termination and other actions, Plaintiff suffered significant economic and non-economic damages.

        WHEREFORE, Plaintiff demands judgment against Defendant for damages, including ongoing damages, in an amount to be determined at trial, but no less than five hundred thousand dollars ($500,000.00), plus interest, fees, and costs, including reasonable attorneys' fees, expert witness fees, litigation expenses, and out-of-pocket costs incurred in connection with this action,

10

and such other and further relief this Honorable Court determines just and equitable.

## COUNT II
### (Retaliative Termination - D.C. False Claims Act, D.C. Code §2-308.16)

65.     Plaintiff adopts and incorporates by reference the foregoing paragraphs as if they were fully set forth herein.

66.     Pursuant to the D.C. False Claims Act, Defendants are prohibited, *inter alia*, from discharging, demoting, suspending, harassing, denying promotion or in any manner discriminating against an employee because of a lawful act done in disclosing corruption.

67.     Plaintiff engaged in a protected activity by reporting conduct, including that enumerated herein, prohibited by D.C. Code § 2-308.14.

68.     Defendants engaged in prohibited personnel actions, including threatening Plaintiff with termination, demoting her to a non-career employee, and ultimately terminating her.

69.     As a consequence of Defendants' termination and other actions, Plaintiff suffered significant economic and emotional damages.

70.     Plaintiff is entitled to all relief necessary to make Plaintiff whole, including but not limited to reinstatement with the same seniority status that the employee would have had but for the discrimination, two times the amount of back pay, interest on the back pay, compensation for all special damages sustained as a result of the discrimination, and, punitive damages.

71.     Plaintiff seeks damages in the amount of all litigation costs and reasonable attorneys fees necessarily incurred.

WHEREFORE, Plaintiff demands judgment against Defendant for damages, including ongoing damages, in an amount to be determined at trial, but no less than five hundred thousand dollars ($500,000.00), plus interest, fees, and costs, including reasonable attorneys' fees, expert witness fees, litigation expenses, and out-of-pocket costs incurred in connection with this action,

and such other and further relief this Honorable Court determines just and equitable.

## COUNT III
### (Wrongful Termination)

72.     Plaintiff adopts and incorporates by reference the foregoing paragraphs as if they were fully set forth herein.

73.     Defendants urged Plaintiff to perform actions and refrain from actions, as discussed herein, including reporting sexual harassment; fraud, waste and abuse; and the other violations of District of Columbia law and policy.

74.     Plaintiff refused to withhold information regarding sexual harassment and fraud, waste, and abuse.

75.     As a result of the aforementioned actions, Defendants terminated Plaintiff in violation of public policy in the District of Columbia.

76.     As a result of Defendants' actions, Plaintiff has suffered significant economic and emotional damages in amount to be determined at trial.

WHEREFORE, Plaintiff demands judgment against Defendant for damages, including ongoing damages, in an amount to be determined at trial, but no less than five hundred thousand dollars ($500,000.00), plus interest, fees, and costs, including reasonable attorneys' fees, expert witness fees, litigation expenses, and out-of-pocket costs incurred in connection with this action, and such other and further relief this Honorable Court determines just and equitable.

## COUNT IV
### (Violation of Due Process Rights)

77.     Plaintiff adopts and incorporates by reference the foregoing paragraphs as if they were fully set forth herein.

78.     Plaintiff had a protected property interest in her employment and in her right to seek review of any termination of her employment with the Office of Employee Appeals ("OEA").

79.     Defendants transitioned Plaintiff to a non-career position without due process and in retaliation for Plaintiff's protected activity, depriving Plaintiff of her property right to her employment and in her right to seek an OEA appeal.

80.     Defendants' transition of Plaintiff to an at-will position was pretextual and intended to deprive her of her due process right to her employment and any OEA appeal.

81.     As a result of her transition to at-will status, Plaintiff was terminated without due process in violation of the Fifth and Fourteenth Amendments.

        WHEREFORE, Plaintiff demands judgment against Defendant for damages, including ongoing damages, in an amount to be determined at trial, but no less than five hundred thousand dollars ($500,000.00), plus interest, fees, and costs, including reasonable attorneys' fees, expert witness fees, litigation expenses, and out-of-pocket costs incurred in connection with this action, and such other and further relief this Honorable Court determines just and equitable.

## COUNT V
### (Declaratory Judgment)

82.     Plaintiff adopts and incorporates by reference the foregoing paragraphs as if they were fully set forth herein.

83.     Plaintiff had a protected property interest in her employment and in her status as a career services employee.  In that capacity, she had a right to seek review of any termination of her employment with the Office of Employee Appeals ("OEA").

84.     Defendants transitioned Plaintiff to a non-career position without due process and in retaliation for Plaintiff's protected activity, depriving Plaintiff of her property right to her employment and in her right to seek an OEA appeal.

85.     Defendants' transition of Plaintiff to an at-will position was pretextual and intended to deprive her of her due process right to her employment and any OEA appeal.

86.     As a result of her transition to at-will status, Plaintiff was terminated from her employment and deprived of any right to an OEA appeal.

87.     OEA has jurisdiction to adjudicate an appeal of an adverse employment action filed by a Career Service employee. *See* D.C. Official Code § 1-606.03. The OEA, does not, however, have jurisdiction to adjudicate an appeal of an adverse employment action filed by an MSS employee.

88.     Section 1-609.58(a) of the D.C. Official Code allows the D.C. Government to unilaterally change an employee's status from Career Service to MSS, and thus remove from the employee the protections afforded by a Career Service status—the type of position that the employee and the employer, the District of Columbia, agreed to.

89.     If the employee declines MSS appointment and there is no vacant Career Service position for which the employee is qualified and is otherwise acceptable, the agency is authorized to issue a 30-day separation notice and terminate the employee.

90.     A government employee who, pursuant to the terms of his or her employment, may only be terminated for cause, possesses a property interest in his continued employment. Furthermore, due process protects the employee from being stripped of his or her employment without being afforded an administrative hearing to contest the termination.

91.     Plaintiff requests that this Court declare that Section 1-609.58(a) of the D.C. Official Code is unconstitutional.

        WHEREFORE, Plaintiff respectfully requests that this Court declare that D.C. Code § 1-609.58(a), which permits the D.C. Government to force a Career Service employee to either transfer to MSS status, under which she has no right to an OEA appeal of her termination, or be terminated altogether, violates the employee's Due Process rights. Plaintiff further requests that

14

this Court declare that the DC DHR's unilateral appointment of Ms. Clayton to MSS status was unconstitutional and that she should still be afforded her full rights as a Career Service employee.

## JURY DEMAND

Plaintiff respectfully requests a jury trial in all claims so triable.

/s/ _____

Levi S. Zaslow (Bar No. MD 29101)

Respectfully submitted,

JOSEPH, GREENWALD & LAAKE, P.A.

/s/ _____

Timothy F. Maloney (Bar No. 416522)
tmaloney@jgllaw.com
Levi S. Zaslow (Bar No. MD29101)
lzaslow@jgllaw.com
6404 Ivy Lane, Suite 400
Greenbelt, Maryland 20770
301.220.2200 (T)
301.220.1214 (F)
*Counsel for Plaintiff Betty Clayton*

Dated: October 26, 2011