UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                                )
BETTY CLAYTON,                  )
                                )
        Plaintiff,              )
                                )
    v.                          )        Civil Action No. 11-1889 (RWR)
                                )
DISTRICT OF COLUMBIA, et al.,   )
                                )
        Defendants.             )
_____)
```

### MEMORANDUM OPINION AND ORDER

Plaintiff Betty Clayton brings suit against the District of Columbia ("District") and the District of Columbia National Guard ("DCNG"), alleging that the District violated the D.C. Whistleblower Protection Act ("DC-WPA"), D.C. Code § 1-615.51 et seq., the D.C. False Claims Act ("DC-FCA"), D.C. Code § 2-381.01 et seq.,[1] and D.C. common law by retaliating against her for making protected disclosures and for engaging in other protected conduct, and the defendants violated the United States Constitution by depriving her of her property interest in her employment without due process.[2]  Clayton also seeks a

---

[1] Clayton brings her claims under D.C. Code § 2-308.16 et seq.  However, after Clayton filed her amended complaint, the DC-FCA was recodified at D.C. Code § 2-381.01 et seq.

[2] Although Clayton's amended complaint appears to allege all five counts against the District and the DCNG, Clayton states in her opposition to the defendants' motions to dismiss that "the crux of Plaintiff's claim against DCNG is as to the due process violations."  Pl.'s Consolidated Opp'n to Defs.' D.C. & D.C. Nat'l Guard's Mots. to Dismiss Am. Compl., Mem. of P. & A. in

-2-

declaratory judgment that D.C. Code § 1-609.58(a) is unconstitutional.  The defendants move to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, and the DCNG moves under Rule 12(b)(1) to dismiss the complaint for lack of subject matter jurisdiction.  Because the court lacks subject matter jurisdiction over Clayton's claims against the DCNG, the DCNG's motion to dismiss will be granted. Because Clayton had amply pled a causal connection between her protected disclosures and the adverse employment action and shown that her DC-WPA claim is not time-barred, Clayton's claims under DC-WPA and DC-FCA against the District will not be dismissed. Because Clayton failed to state a claim against the District under D.C. common law and the Fifth Amendment of the U.S. Constitution, Counts Three, Four, and Five of Clayton's amended complaint will be dismissed as to the District.

<u>BACKGROUND</u>

Clayton's amended complaint makes the following factual assertions.  In June 2008, Clayton was appointed as the Director of the D.C. Government Operations Division of the DCNG.  Am. Compl. ¶ 5.  The D.C. Government Operations Division is "simultaneously a Directorate within Joint Force [Headquarters], DC National Guard and an agency of the Government of the District

_____

Supp. of Pl.'s Consolidated Opp'n to Defs.' D.C. & D.C. Nat'l Guard's Mots. to Dismiss Am. Compl. ("Pl.'s Opp'n") at 35 n.3.

-3-

of Columbia." Id. ¶ 9.[3]  When Clayton was appointed, the
Director of the D.C. Government Operations Division was a Career
Service position.  Id. ¶ 6.[4]  During the events relevant to the
complaint, Clayton reported to Major General Errol Schwartz, the
Commanding General of the Joint Force Headquarters of the DCNG.
Id. ¶¶ 7, 13.  General Schwartz also completed Clayton's
performance evaluations and Clayton always received "flawless
employment appraisals."  Id. ¶ 10.  As the Commanding General of
the DCNG, General Schwartz is a federal employee of the
Department of Defense.  See D.C. Code § 49-301(b).

As the agency head, Clayton was "under an obligation and
duty to investigate and discipline potential wrongdoing at the
DCNG as well as report fraud, waste and abuse."  Am. Compl. ¶ 11.
In this capacity, from April 2010 through August 2010, Clayton
reported several incidents of unlawful conduct within the DCNG.
For example, Tamera Jones, General Schwartz's administrative
assistant, filed a sexual harassment complaint against the
General.  Id. ¶ 14.  Despite pressure from Judge Advocate General
("JAG") and federal Inspector General investigators "to not file

---

[3] "The Division serves as the primary link between the
District and the DCNG[.]"  Def. D.C.'s Mot. to Dismiss the Am.
Compl., Mem. of P. & A. in Supp. of Def. D.C.'s Mot. to Dismiss
the Am. Compl. ("District's Mem.") at 3.

[4] A Career Service employee "can be terminated only for
'cause,' and such terminations are subject to appeal to the
District's Office of Employee Appeals ('OEA')."  District's Mem.
at 3-4 (citing D.C. Code. § 1-608.01(a)(13); Am. Compl. ¶ 104).

-4-

or report the sexual harassment allegations made by Ms. Jones[,]" Clayton reported Jones's allegations in April 2010.  Id. ¶¶ 16-18.  Shortly after Clayton reported the sexual harassment complaint, General Schwartz threatened Clayton saying "we'll see who's sitting in that seat on October 1st."  Id. ¶¶ 19-20. General Schwartz made similar termination threats in June or July 2009, January 2010, and September 2010.  Id. ¶ 68.

Later, Clayton reported that Charlotte Clipper, the Human Resources Supervisor of the D.C. Government Operations Division, had "engaged in behavior that was inappropriate and against policy on numerous occasions."  Id. ¶¶ 8, 22.  For example, Clayton reported that Clipper had used a DCNG credit card to illegally pay for attorney's fees for a non-work-related matter for a former employee, and that Clipper had promoted herself, "wrote her own performance evaluation for an incentive award," and "inappropriately removed paychecks from the DCNG building[.]" Id. ¶¶ 24-29, 32.  Again, JAG investigators tried to stop Clayton from reporting Clipper's violations, id. ¶¶ 36-37, but Clayton reported the violations, id. ¶ 38.  Clayton also reassigned Clipper and attempted to have her terminated from the DCNG.  Id. ¶ 40.  Clayton reported these and other violations to General Schwartz.  Id. ¶ 65.

In May 2010, "General Schwartz's staff solicited the advice of the D.C. Human Resources Department's General Counsel

regarding General Schwartz's administrative authority over the
employees of the Government Operations Division." Id. ¶ 70.  On
August 27, 2010, Attorney General Nickles responded to
General Schwartz's inquiry stating that the Division is a
"subordinate agency of the Mayor of the District of Columbia" and
that the Director of the Government Operations Division is "a
District employee" who is "subject to the personnel rules,
regulations, laws and the policy of the District[.]"  Def. D.C.'s
Mot. to Dismiss the Am. Compl. ("District's Mot."), Ex. (Letter
from Peter J. Nickles, Attorney General for the District of
Columbia, to Major General Erroll [sic] R. Schwartz, Commanding
General, District of Columbia National Guard (Aug. 27, 2010) at
1-2).  The Director's "chief responsibility" is "[s]upervision of
District personnel assigned to the DCNG." Id. at 2.  Although
the Division is a District agency, in light of the Division's
mission "to facilitate the coordination of operational programs
so that the National Guard can efficiently respond to natural and
civil emergencies in the District," the Commanding General has
"the opportunity to collaborate with District officials regarding
the personnel matters of the Division[.]" Id.  The Commanding
General is also "free to confer with the Mayor" on personnel
matters "if personnel problems rise to the level where it impacts
the readiness of the National Guard[.]" Id.

-6-

In August 2010, Clayton also met with Attorney General Nickels to discuss "the interplay between the Government Operations Division of the DCNG and the DCNG." Am. Compl. ¶ 77. The Attorney General told Clayton that she should report to Neil Albert, the District of Columbia City Administrator and a close personal friend of General Schwartz. Id. After meeting with the Attorney General, Clayton contacted Albert numerous times but was told that Albert could meet with her no sooner than mid-November 2010. Id.

On September 27, 2010, Clayton received a letter stating that the Director position was being reclassified from a Career Service position to an at-will, Management Supervisory Service ("MSS") position under D.C. Code § 1-609.58(a).[5] Id. ¶¶ 74, 78.

---

[5] D.C. Code § 1-609.58(a) provides:
Persons currently holding appointments to positions in the Career Service who meet the definition of "management employee" as defined in § 1-614.11(5) shall be appointed to the Management Supervisory Service unless the employee declines the appointment. Persons declining appointment shall have priority for appointment to the Career Service if a vacant position for which they qualify is available within the agency and is acceptable to the employee. If no such vacant position is available, a 30-day separation notice shall be issued to the employee, who shall be entitled to severance pay in the manner provided by § 1-624.09.
D.C. Code § 1-609.58. This provision was added to the D.C. Government Comprehensive Merit Personnel Act in June 1998. Even though the language of the statute uses the modifier "currently," it appears that the District has previously used the process outlined in the statute to reappoint to an MSS position a management employee who was appointed to a Career Service position after 1998. See, e.g., Final Brief for Appellees, Geleta v. Gray, 645 F.3d 408 (D.C. Cir. 2011) (No. 10-7026), 2010

-7-

After learning that there were no vacant Career Service positions, Clayton accepted that her Director position would be converted to an MSS position.  Id. ¶ 75.  On October 26, 2010, Clayton received a notification from Albert that she was being terminated without cause effective November 10, 2010.  Id. ¶ 76.

On October 26, 2011, Clayton filed suit against the District and the DCNG.  In Clayton's five-count amended complaint, Clayton alleges in Counts One and Two that the District retaliated against her for making protected disclosures and engaging in protected conduct in violation of the DC-WPA and the DC-FCA respectively.  Id. ¶¶ 86-97.  Count Three alleges that the District wrongfully terminated Clayton in violation of District of Columbia common law.  Id. ¶¶ 98-102.  Count Four alleges that the District and the DCNG violated Clayton's constitutional due process rights by depriving Clayton of her protected property interest in her employment and right to seek review of any termination of her employment with the Office of Employee Appeals ("OEA") without due process, and seeks money damages for the constitutional violation.  Id. ¶¶ 103-07.  Count Five seeks a

---

WL 6368292, at *12, *23-24.  A "management employee" is "any person whose functions include responsibility for project management and supervision of staff and the achievement of the project's overall goals and objectives."  D.C. Code § 1-614.11 (emphasis added).  Thus, the Director of D.C. Government Operations -- as described in the Attorney General's letter -- is a management employee subject to D.C. Code § 1-609.58.

-8-

declaratory judgment that D.C. Code § 1-609.58(a) is unconstitutional on its face and as applied.  <u>Id.</u> ¶ 117 & 18-19.

The DCNG moves to dismiss the counts against it under Rule 12(b)(1) because neither Congress nor the DCNG has waived sovereign immunity for Clayton's constitutional claims.  D.C. Nat'l Guard's Mot. to Dismiss, D.C. Nat'l Guard's Mem. in Supp. of Mot. to Dismiss ("DCNG's Mem.") at 6-9.  The District also moves to dismiss the amended complaint under Rule 12(b)(6).  District's Mot. at 1.  Clayton opposes.

<u>DISCUSSION</u>

I.   CLAIMS AGAINST THE DCNG

Clayton's amended complaint seeks damages from the DCNG under the Fourteenth Amendment and a declaratory judgment that D.C. Code § 1-609.58(a) is unconstitutional.  The DCNG argues that both counts must be dismissed because they are barred by sovereign immunity.  DCNG's Mem. at 6-9.

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."  <u>FDIC v. Meyer</u>, 510 U.S. 471, 475 (1994); <u>United States v. Mitchell</u>, 463 U.S. 206, 212, (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction.").  "A waiver of sovereign immunity 'must be unequivocally expressed in statutory text, and will not be implied.'"  <u>Kurtz v. United States</u>, 798 F. Supp. 2d

285, 289 (D.D.C. 2011) (quoting <u>Lane v. Pena</u>, 518 U.S. 187, 192 (1996)).  If sovereign immunity has not been waived, a claim is subject to dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction.  <u>Mullen v. Bureau of Prisons</u>, 843 F. Supp. 2d 112, 116 (D.D.C. 2012); <u>see also</u> <u>Meyer</u>, 510 U.S. at 475 (stating that "[s]overeign immunity is jurisdictional in nature").  "Plaintiff bears the burden of establishing that sovereign immunity has been abrogated."  <u>Stone v. Dep't of Hsg. & Urban Dev't</u>, 859 F. Supp. 2d 59, 63 (D.D.C. 2012).

In considering a motion to dismiss for lack of subject matter jurisdiction, a court "treat[s] the complaint's factual allegations as true" and "grant[s] plaintiff 'the benefit of all inferences that can be derived from the facts alleged[.]'" <u>Sparrow v. United Air Lines, Inc.</u>, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quoting <u>Schuler v. United States</u>, 671 F.2d 605, 608 (D.C. Cir. 1979)).  However, "[b]ecause subject matter jurisdiction focuses on the court's power to hear the claim, . . . the court must give the plaintiff's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion[.]"  <u>Aref v. Holder</u>, 774 F. Supp. 2d 147, 159 (D.D.C. 2011).

Clayton does not dispute the DCNG's assertion that the DCNG is a federal entity.  Even if she did, "'[i]t is apparent that the organized militia of the District of Columbia, which is

organized, armed, and controlled by the President of the United States, is essentially a component of the federal government.'" Lilly v. Schwartz, 713 F. Supp. 2d 15, 19 n.2 (D.D.C. 2010) (quoting Seegars v. Ashcroft, 297 F. Supp. 2d 201, 241 (D.D.C. 2004)).  In light of the "degree of supervision and control exercised over the District Guard in peacetime by federal authorities[,]" the DCNG is a federal entity during times of peace and times of war.  O'Toole v. United States, 206 F.2d 912, 917-18 (3d Cir. 1953).

Despite the DCNG's status as a federal entity, Clayton argues that the court has subject matter jurisdiction over Clayton's claim for damages allegedly caused by the DCNG's constitutional violation because federal courts have jurisdiction to hear military personnel decisions where constitutional wrongs are alleged.  Clayton primarily relies on two cases for her argument: Lilly and Larsen v. U.S. Navy, 486 F. Supp. 2d 11 (D.D.C. 2007).  However, neither case provides support for Clayton's argument that the United States has waived sovereign immunity for claims for damages caused by constitutional violations.  In Lilly, the plaintiff brought suit challenging his removal from the DCNG and alleging that "the procedures that led to his separation were inadequate." Lilly, 713 F. Supp. 2d at 17.  There, the plaintiff sought an equitable remedy in the form of reinstatement to full active duty.  Id. at 16.  Similarly, in

Larsen, the plaintiff sought review of a military personnel decision, alleging a constitutional violation and seeking equitable remedies, and the court held that sovereign immunity did not bar the claim.  See Larsen, 486 F. Supp. 2d at 16-17. While these cases support a finding that constitutional violations in military personnel decisions can be reviewed by federal district courts, they do not disrupt the well-settled principle that sovereign immunity bars claims against federal agencies for *damages* caused by constitutional violations.  See Meyer, 510 U.S. at 486 (holding that a remedy under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), is not available against the agencies of the federal government); Duarte v. United States, 532 F.2d 850, 852 (2d Cir. 1976).  Because Clayton has not met her burden to establish that this court has subject matter jurisdiction over her constitutional claim for damages, Count IV of her amended complaint will be dismissed as against the DCNG.

The DCNG also argues that the court does not have subject matter jurisdiction over Clayton's claim against it for a declaratory judgment that D.C. Code § 1-609.58(a) is unconstitutional.  Clayton asserts that this court has jurisdiction to hear her claims under 28 U.S.C. §§ 1332 and 1367. Am. Compl. ¶ 4.  However, neither statute waives sovereign immunity.  See Reading v. United States, 506 F. Supp. 2d 13,

20-21 (D.D.C. 2007).  Similarly, the Declaratory Judgment Act, 28

U.S.C. § 2201, provides a remedy where the court already has

jurisdiction, but the Act does not waive sovereign immunity.  <u>See</u>

<u>Stone v. Holder</u>, 859 F. Supp. 2d 48, 52 (D.D.C. 2012) (citing

<u>Walton v. Fed'l Bureau of Prisons</u>, 533 F. Supp. 2d 107, 114

(D.D.C. 2008)).  Because Clayton has not demonstrated that

sovereign immunity has been abrogated for her claim seeking

declaratory relief, Count V will be dismissed as to the DCNG.[6]

II.  CLAIMS AGAINST THE DISTRICT

The District alleges that Clayton's amended complaint should

be dismissed because it fails to state a claim against it.

A district court can dismiss a complaint under Rule 12(b)(6)

when the complaint "fail[s] to state a claim upon which relief

can be granted[.]"  Fed. R. Civ. P. 12(b)(6); <u>see also</u> <u>Browning</u>

<u>v. Clinton</u>, 292 F.3d 235, 242 (D.C. Cir. 2002) ("A Rule 12(b)(6)

motion tests the legal sufficiency of a complaint[.]").

> To survive a motion to dismiss, a complaint must
> contain sufficient factual matter, accepted as true, to
> "state a claim to relief that is plausible on its
> face."  A claim has facial plausibility when the
> plaintiff pleads factual content that allows the court
> to draw the reasonable inference that the defendant is
> liable for the misconduct alleged.

<u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citations omitted)

(quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).

---

[6] Moreover, Clayton has not established that it would be
proper to sue DCNG -- a federal entity -- for a declaratory
judgment that a District of Columbia statute is unconstitutional.

-13-

"[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations[.]" <u>Twombly</u>, 550 U.S. at 555.  However, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" <u>Iqbal</u>, 556 U.S. at 678 (internal quotation marks omitted) (quoting <u>Twombly</u>, 550 U.S. at 557).

When considering a Rule 12(b)(6) motion, a court construes the complaint in the light most favorable to the plaintiff and "assume[s] the truth of all well-pleaded allegations." <u>Warren v. District of Columbia</u>, 353 F.3d 36, 39 (D.C. Cir. 2004).  The court may consider "only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [it] may take judicial notice." <u>EEOC v. St. Francis Xavier Parochial Sch.</u>, 117 F.3d 621, 624 (D.C. Cir. 1997).

    A.   <u>Causal connection between protected activity and adverse employment action</u>

The District argues that Clayton failed to allege sufficient facts in Counts One, Two, and Three to demonstrate that there was a causal connection between Clayton's protected activities and the adverse employment action.  District's Mot. at 1.

Clayton must allege that there is a causal link between her supervisors' threats of termination and her ultimate termination on the one hand and her protected disclosures on the other hand

-14-

to state a claim of retaliation under the DC-WPA[7] and DC-FCA[8] or

a claim of wrongful termination under D.C. common law[9].  Despite

the plaintiff's burden, it is well-established that "[a]

plaintiff alleging retaliation faces a low hurdle at the motion

to dismiss stage."  Teliska v. Napolitano, 826 F. Supp. 2d 94,

100 (D.D.C. 2011) (collecting cases).  With respect to causation,

"[a]t this early stage of the proceedings, plaintiff can meet her

*prima facie* burden of causation simply by alleging that the

adverse actions [that were supported by facts in her complaint]

were caused by her protected activity."  Vance v. Chao, 496 F.

Supp. 2d 182, 185, 187 (D.D.C. 2007).

---

[7] See Wilburn v. District of Columbia, 957 A.2d 921, 922 n.3
(D.C. 2008) ("A public employee makes a prima facie case [of
retaliation in violation of the DC-WPA] by showing that the
protected disclosure was a contributing factor in the prohibited
personnel action[.]" (citing Johnson v. District of Columbia, 935
A.2d 1113, 1119 (D.C. 2007))).

[8] See Payne v. District of Columbia, 773 F. Supp. 2d 89, 97
(D.D.C. 2011) ("To establish a D.C. False Claims Act retaliation
claim, a plaintiff must show (1) that he or she engaged in
protected activity, (2) that the defendant had knowledge that the
plaintiff engaged in such protected activity, (3) that the
defendant terminated the plaintiff's employment, and (4) that
there was a causal connection between the protected activity and
the defendant's termination of the plaintiff's employment.").

[9] To state a claim of wrongful termination under D.C. common
law, a plaintiff must "clearly articulate the applicable public
policy, [and] show a causal connection between protected activity
in which that plaintiff engaged and his or her termination."
Stevens v. Sodexo, Inc., 846 F. Supp. 2d 119, 126 (D.D.C. 2012).
"That is, the plaintiff 'must have been terminated for acting in
a protected manner.'"  Id. (quoting Robinson v. Securitas Servs.,
Inc., 819 F. Supp. 2d 18, 21 (D.D.C. 2011)).

-15-

A plaintiff may show causation through direct evidence or circumstantial evidence, such as by showing that the employer had knowledge of the employee's protected conduct and a close temporal proximity between the employer's knowledge and the adverse actions.  Rattigan v. Gonzales, 503 F. Supp. 2d 56, 77 (D.D.C. 2007); see also Johnson, 935 A.2d at 1120-21.  Clayton argues that her amended complaint alleges sufficient facts to create an inference that her reclassification and termination were in retaliation for her protected conduct.[10]  Clayton's amended complaint supports a finding that the District knew of Clayton's protected conduct and that there was a close temporal relationship between that knowledge and the adverse employment action.  The amended complaint alleges that Albert and General Schwartz were personal friends.  Am. Compl. ¶ 77.  It also suggests that Albert refused to meet with Clayton until after her

---

[10] In her opposition, Clayton also argues that her notice of reassignment is direct evidence that her reclassification and termination were retaliatory because the notice stated that the reclassification "'[was] taken in accordance with' [General Schwartz's] inquiries."  Pl.'s Opp'n at 13 (first alteration in original).  However, Clayton's amended complaint does not contain this factual allegation and neither party has submitted a copy of the reassignment notice for consideration.  Thus, this argument will not be considered because it is not relevant to determine whether Clayton has pled sufficient facts in her amended complaint to state a cause of action for her claims.  See Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Serv., 297 F. Supp. 2d 165, 170 (D.D.C. 2003) ("'It is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss.'" (quoting Coleman v. Pension Benefit Guar. Corp., 94 F. Supp. 2d 18, 24 n.8 (D.D.C. 2000))).

termination was effective.  Id.  Considered in the light most favorable to Clayton, these allegations and the reasonable inferences drawn from them support a finding that Albert knew of Clayton's protected conduct.

The temporal proximity between Clayton's protected activities and her reclassification and termination also support Clayton's argument that the adverse employment actions were retaliatory.  Clayton alleges that she engaged in protected conduct through August 2010.  See id. ¶ 42.  Clayton's position was reclassified the next month and she was notified of her termination in October 2010.  Id. ¶¶ 74, 76.  The passage of merely two months between Clayton's protected conduct and the reclassification and termination can be sufficient to establish a causal connection.  See Booth v. District of Columbia, 701 F. Supp. 2d 73, 79 (D.D.C. 2010).  Clayton's retaliation and wrongful termination claims will not be dismissed for failure to state a claim.

B.   DC-WPA claim

Clayton claims that reclassifying the Director position as an MSS position violated the DC-WPA.  The District argues this claim should be dismissed because it is time-barred.  District's Mot. at 1.  To bring a civil action against the District under DC-WPA, a complainant must file the action "within 3 years after a violation occurs or within one year after the employee first

becomes aware of the violation, whichever occurs first." D.C.
Code § 1-615.54(a)(2). Clayton filed her original complaint on
October 26, 2011. Courts presume that an employee becomes aware
of the violation at the time that the adverse employment act
occurs. See Sharma v. District of Columbia, 791 F. Supp. 2d 207,
214 (D.D.C. 2011); Stephenson v. Am. Dental Ass'n, 789 A.2d 1248,
1250 (D.C. 2002). However, an employee may argue that she did
not learn that the action was retaliatory until some later date,
and thus, the one-year statutory period began later. See Payne
v. District of Columbia, 808 F. Supp. 2d 164, 171 (D.D.C. 2011)
(explaining that the one-year statute of limitations for the
employee's DC-WPA claim that his termination was retaliatory
began when the employee received notice of his termination
because the employee "never argued that he did not discover that
his termination was retaliatory until some later date").

    The parties implicitly agree that a one-year statute of
limitations applies to Clayton's reclassification claim but they
disagree to as to when the period began. The District argues
that the one-year period began on September 27, 2010 when Clayton
"received a letter 'removing her from her protected career
service position and reassigning her to an at-will MSS
position[.]'" District's Mot., Mem. of P. & A. in Supp. of Def.
D.C.'s Mot. to Dismiss the Am. Compl. ("District's Mem.") at 9
(quoting Am. Compl. ¶ 74). Clayton alleges that although she

received notice of reclassification on September 27, 2010, she
did not discover that the reclassification was retaliatory until
her termination became effective on November 10, 2010.  See Pl.'s
Consolidated Opp'n to Defs.' D.C. & D.C. Nat'l Guard's Mots. to
Dismiss Am. Compl., Mem. of P. & A. in Supp. of Pl.'s
Consolidated Opp'n to Defs.' D.C. & D.C. Nat'l Guard's Mots. to
Dismiss Am. Compl. ("Pl.'s Opp'n") at 10-11 (arguing that it was
not until November 2010 when "the operative facts of the
retaliation were revealed and made known to Plaintiff and the
discriminatory animus became known").  Assuming that Clayton's
allegation that she did not discover that the reclassification
was retaliatory until November 10, 2010 is true, her claim that
the reclassification of her Career Service position to an MSS
position was retaliatory was not filed untimely.

     C.   Wrongful termination claim

     The District also argues that Clayton's wrongful termination
claim should be dismissed for failure to state a claim.
District's Mem. at 15-17.  Clayton counters that her wrongful
termination claim falls under the "Adams exception" and is
distinct from her DC-WPA claim because Clayton also claims that
she was terminated for reporting Jones's sexual harassment
complaint and "for taking action to stop [Clipper's] illegal
activity[,]" not just for reporting it.  Pl.'s Opp'n at 24.

Generally, an employer may terminate an "at-will" employee at any time for any reason. However, in <u>Adams v. George W. Cochran & Co., Inc.</u>, 597 A.2d 28, 34 (D.C. 1991), the District of Columbia Court of Appeals recognized a narrow public policy exception to the at-will doctrine when "the sole reason for the discharge is the employee's refusal to violate the law, as expressed in a statute or municipal regulation." <u>Id.</u> In <u>Carl v. Children's Hospital</u>, 702 A.2d 159 (D.C. 1997), the court expanded the public policy exception to include any exception "firmly anchored either in the Constitution or in a statute or regulation which clearly reflects the particular 'public policy' being relied upon." <u>Id.</u> at 162 (Terry, J., concurring); <u>see also Stevens v. Sodexo, Inc.</u>, 846 F. Supp. 2d 119, 126 (D.D.C. 2012).

To state a claim for wrongful termination, the at-will employee must "clearly articulate the applicable public policy[.]" <u>Stevens</u>, 846 F. Supp. 2d at 126. Even where there is a showing of a clearly identifiable policy, the D.C. Court of Appeals has refused to find new exceptions to the doctrine of at-will employment where the legislature has already "'creat[ed] a specific, statutory cause of action to enforce' the public policy at issue." <u>See LeFande v. District of Columbia</u>, 864 F. Supp. 2d 44, 50 (D.D.C. 2012) (quoting <u>Carter v. District of Columbia</u>, 980 A.2d 1217, 1225-26 (D.C. 2009)).

-20-

Here, Clayton's wrongful termination claim fails for two reasons.  First, to the extent that Clayton claims that she was wrongfully terminated because she reported Jones's sexual harassment complaint and attempted to stop Clipper's allegedly illegal activity, Clayton does not clearly articulate the applicable public policy found in the Constitution, a statute, or a regulation.  Her amended complaint alleges that as the Director of the D.C. Government Operations Division, Clayton was "under an obligation and duty to investigate and discipline potential wrongdoing at the DCNG[.]"  Am. Compl. ¶ 11; see also id. ¶ 18. However, Clayton does not identify an actual statute or municipal regulation that articulates the public policy she believes was involved here, and a general, vague duty does not suffice to state a claim of wrongful termination.  See Robinson, 819 F. Supp. 2d at 21-22.

Second, to the extent that Clayton claims that she was wrongfully terminated because she reported fraud, waste, and abuse, her wrongful termination claim fails because this conduct also violates the DC-WPA and the DC-WPA provides a remedy for the illegal conduct.[11]  The public policy exception to the at-will

---

[11] The DC-WPA "prohibits a supervisor from taking a 'prohibited personnel action,' including terminating an employee, in retaliation for that employee's having made a 'protected disclosure.'"  Williams v. District of Columbia, 9 A.3d 484, 488 (D.C. 2010) (quoting D.C. Code §§ 1-615.52, 53).  A protected disclosure is
     any disclosure of information . . . , including a

doctrine "must arise from a statute or regulation that does not provide its own remedy." Stevens, 846 F. Supp. 2d at 126 (citing Carson v. Sim, 778 F. Supp. 2d 85, 97 (D.D.C. 2011)).   Thus, because Clayton's "conduct in reporting violations fell squarely under the aegis of the [DC-WPA,]" recognizing a public policy exception here is not warranted.   See Carter, 980 A.2d at 1225-26 (declining to find a public policy exception where the plaintiff alleged that she was terminated for making protected disclosures).

    D.   Due process claims

    Clayton claims that converting the Director position to an MSS position and terminating her violated the Due Process Clause of the Fifth Amendment.   Clayton also brings a facial challenge to the constitutionality of D.C. Code § 1-609.58(a).   The

---

disclosure made in the ordinary course of an employee's duties by an employee to a supervisor or a public body that the employee reasonably believes evidences:
(A) Gross mismanagement;
(B) Gross misuse or waste of public resources or funds;
(C) Abuse of authority in connection with the administration of a public program or the execution of a public contract;
(D) A violation of a federal, state, or local law, rule, or regulation, or of a term of a contract between the District government and a District government contractor which is not of a merely technical or minimal nature; or
(E) A substantial and specific danger to the public health and safety.
D.C. Code § 1-615.52.   "An employee aggrieved by a violation of the [DC-WPA] may bring a civil action against the District . . . seeking relief and damages[.]"   D.C. Code § 1-615.54(a)(1).

-22-

District argues that Clayton's facial challenge is contrary to
settled law and does not state a claim for procedural due
process.[12]  District's Mot. at 1.

To state a procedural due process claim, a plaintiff must
show that she was deprived of life, liberty, or property without
due process of law.  See Propert v. District of Columbia, 948
F.2d 1327, 1331 (D.C. Cir. 1991).  "Property interests are not
created by the Constitution, 'they are created and their
dimensions are defined by existing rules or understandings that
stem from an independent source such as state law[.]'"  Cleveland
Bd. of Educ. v. Loudermill, 470 U.S. 532, 538 (1985) (quoting Bd.
of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972)).

    1.   Reclassifying Director position

The District argues that reclassifying the Director position
from a Career Service position to an MSS position did not violate
Clayton's due process rights as a matter of law because the
position was reclassified to comply with D.C. Code § 1-609.58(a),
a legislative action converting Career Service managers to at-
will employees that the legislature had the right to take.
District's Mem. at 19-21.

---

[12] The District does not challenge the adequacy of Clayton's
as-applied constitutional challenge.  Accordingly, that claim
will not be dismissed.

Clayton was hired into a Career Service position that carried with it a property right.[13]   "[A] D.C. Career Service employee ha[s] a protected property interest in his job" because he can be removed only for cause.  Thompson v. District of Columbia, 530 F.3d 914, 918 (D.C. Cir. 2008); see also Hoey v. District of Columbia, 540 F. Supp. 2d 218, 225 (D.D.C. 2008) ("By ensuring that Career Service employees may only be terminated (or otherwise disciplined) for cause and after adequate notice, the [Comprehensive Merit Personnel Act] bestows upon Career Service employees a legitimate claim of entitlement to their continued employment that gives rise to a property interest protected by the Due Process Clause." (internal quotation marks omitted)). Accordingly, a Career Service employee cannot "be 'removed from the Service' without receiving due process."  Thompson, 530 F.3d at 918 (citing D.C. Dep't of Corr. v. Teamsters Union Local No. 246, 554 A.2d 319, 326 (D.C. 1989)).

---

[13] While the District does not dispute that a Career Service employee has a property right in her job, the District argues that Clayton does not have a property interest in her right to seek review with the OEA of any termination of her employment. District's Mem. at 17 n.13 (citing Brandon v. D.C. Bd. of Parole, 823 F.2d 644, 649 (D.C. Cir. 1987) (explaining that the process due is distinct from the substantive interest)).  Although Clayton alleges in her amended complaint that she had a property interest in her right to appeal her termination to the OEA, Clayton does not respond in her opposition to the District's argument.  Thus, the District's argument is undisputed and will be deemed conceded.  See Iweala v. Operational Techs. Servs., Inc., 634 F. Supp. 2d 73, 80–81 (D.D.C. 2009).

"[The court] [h]aving determined that [Clayton] possessed a protected property interest in [her Career Service position], the next question is what process was due." Propert, 948 F.2d at 1331.  Generally, a hearing is required before a party can be deprived of a property right.  Where a party is deprived of a property right following enactment of a statute, though, "the legislative determination provides all the process that is due[.]"  Logan v. Zimmerman Brush Co., 455 U.S. 422, 433 (1982); see also Bi-Metallic Inv. Co. v. State Bd. of Equalization, 239 U.S. 441, 445 (1915).  The District reclassified the Director position as an MSS position to comply with D.C. Code § 1-609.58. Clayton does not argue that the legislative process to enact the statute was constitutionally deficient, but she notes that D.C. Code § 1-609.58 was enacted long before her appointment and was not what triggered the reclassification.  Given that, it may be that her initial designation as a Career Service employee rather than an MSS employee was faulty.  Nevertheless, the District argues that Clayton received all the process due under the statute when a Career Service management employee is converted to MSS status.  Clayton neither disputes the legislative prerogative to abolish protected government jobs nor sets forth what process was due her in addition to the alternatives she was offered by law to accept the reclassification or pursue other Career Service opportunities, unpleasant as the alternatives may have been.

-25-

Clayton's claim that reclassification of her position was unconstitutional will be dismissed.[14]

Clayton also claims that D.C. Code § 1-609.58(a) is unconstitutional on its face.  The District argues that this claim should be dismissed because Clayton did not establish that there is no set of circumstances under which the statute could be constitutional.  District's Mem. at 21 n.14.  As is discussed above, when a general statute works to deprive a person of a property interest, the democratic process and not an individualized deprivation hearing sufficiently protects their rights.  See Bi-Metallic, 239 U.S. at 445-46.  Moreover, Clayton failed to meet her heavy burden to show that the statute is unconstitutional.  See Kraft Gen. Foods, Inc. v. Iowa Dep't of Revenue & Fin., 505 U.S. 71, 82 (1992).  Clayton fails to allege facts sufficient to "establish that no set of circumstances exists under which [D.C. Code § 1-609.58] would be valid."  See United States v. Salerno, 481 U.S. 739, 745 (1987).  Thus,

---

[14] Clayton's argument that the District applied D.C. Code § 1-609.58 as pretext to unlawfully reclassify her position, Pl.'s Opp'n at 34, does not compel a different conclusion. Clayton does not contest that the Director of the D.C. Government Operations Division is a "management employee."  Section 1-609.58 does not allow the District any discretion in deciding whether to a reclassify a Career Service position held by a "management employee" as an MSS position.  Thus, "the state of mind of local officials who enforce or comply with state or federal regulations is immaterial to whether the local government is violating the Constitution if the local officials could not act otherwise without violating state or federal law."  Bethesda Lutheran Homes & Servs., Inc. v. Leean, 154 F.3d 716, 718 (7th Cir. 1998).

-26-

Clayton's facial challenge will be dismissed for failure to state
a claim.

     2.  Termination

     The District argues that Clayton's termination did not
violate the Due Process Clause because Clayton did not have a
protected property interest in her job at the time she was
terminated.  District's Mem. at 18-19.  Unlike a Career Service
position, "an at-will [MSS] employee has no liberty or property
interest in continued employment, and it is clear that D.C. law
creates no such interest."  <u>O'Donnell v. Barry</u>, 148 F.3d 1126,
1139 (D.C. Cir. 1998).  Because Clayton was an at-will, MSS
employee at the time she was terminated, she did not have a
property interest in her position and she was not entitled to an
OEA appeal before she was terminated.  <u>See</u> <u>Leonard v. District of
Columbia</u>, 794 A.2d 618, 623-27 (D.C. 2002).

<u>CONCLUSION AND ORDER</u>

     Because Clayton did not establish that the DCNG waived
sovereign immunity, the DCNG's motion to dismiss will be granted.
Clayton alleged a causal connection between her protected
disclosures and the adverse employment actions and demonstrated
that her DC-WPA claim is not time-barred.  Thus, Clayton's DC-WPA
and DC-FCA claims will not be dismissed.  Because Clayton failed
to state a claim of wrongful termination, her common law claim
will be dismissed.  Clayton has not pled facts reflecting that

Case 1:11-cv-01889-RDM   Document 34   Filed 03/21/13   Page 27 of 27

she was denied due process when the Director position was
reclassified as an MSS position, and Clayton did not have a
property interest in her job at the time she was terminated.  In
addition, Clayton failed to state a claim making a facial
challenge to D.C. Code § 1-609.58(a).  Thus, her due process
claim and claim for a declaratory judgment that D.C. Code
§ 1.609-58(a) is unconstitutional on its face will be dismissed.
Accordingly, it is hereby

ORDERED that the DCNG's motion [27] to dismiss be, and
hereby is, GRANTED.  It is further

ORDERED that the District's motion [26] to dismiss be, and
hereby is GRANTED IN PART and DENIED IN PART.  The District's
motion regarding Counts One and Two of Clayton's amended
complaint is denied.  Counts Three and Four and Clayton's facial
challenge to D.C. Code § 1-609.58(a) in Count Five of Clayton's
amended complaint are dismissed.

SIGNED this 21st day of March, 2013.


_____/s/_____
RICHARD W. ROBERTS
United States District Judge