UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| BETTY CLAYTON, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 11-1889 (RWR) |
| DISTRICT OF COLUMBIA, | ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Betty Clayton brings suit against the District of Columbia ("District") alleging that the District reclassified her position and terminated her in violation of D.C. law and the United States Constitution. The District moves for reconsideration of a March 21, 2013 memorandum opinion and order that granted in part and denied in part the District's motion to dismiss. Because justice does not require reconsideration, the District's motion will be denied.

BACKGROUND

The background of this case is discussed more fully in Clayton v. District of Columbia, Civil Action No. 11-1889 (RWR), 2013 WL 1154098 (D.D.C. Mar. 21, 2013). Briefly, Clayton was the Director of the D.C. Government Operations Division of the District of Columbia National Guard ("DCNG"). Id. at *1. "During the events relevant to the complaint, Clayton reported to Major General Errol Schwartz, the Commanding General of the Joint

Force Headquarters of the DCNG." Id. As the agency head, Clayton was "under an obligation and duty to investigate and discipline potential wrongdoing at the DCNG as well as report fraud, waste and abuse." Id. (internal quotation marks omitted). Clayton alleges that in this capacity, she reported several incidents of unlawful conduct within the DCNG despite pressure from the Judge Advocate General and federal Inspector General investigators "to not file or report the sexual harassment allegations[.]" Id. (internal quotation marks omitted).

When Clayton was appointed, the Director of the D.C. Government Operations Division was a Career Service position. Id.

> In May 2010, "General Schwartz's staff solicited the advice of the D.C. Human Resources Department's General Counsel regarding General Schwartz's administrative authority over the employees of the Government Operations Division." [Am. Compl.] ¶ 70. On August 27, 2010, Attorney General Nickles responded to General Schwartz's inquiry stating that the Division is a "subordinate agency of the Mayor of the District of Columbia" and that the Director of the Government Operations Division is "a District employee" who is "subject to the personnel rules, regulations, laws and the policy of the District[.]" Def. D.C.'s Mot. to Dismiss the Am. Compl. ("District's Mot."), Ex. (Letter from Peter J. Nickles, Attorney General for the District of Columbia, to Major General Erroll [sic] R. Schwartz, Commanding General, District of Columbia National Guard (Aug. 27, 2010) at 1-2). The Director's "chief responsibility" is "[s]upervision of District personnel assigned to the DCNG." Id. at 2. Although the Division is a District agency, in light of the Division's mission "to facilitate the coordination of operational programs so that the National Guard can efficiently respond to natural and civil emergencies in the District," the Commanding General has "the

>opportunity to collaborate with District officials
>regarding the personnel matters of the Division[.]"
>Id.  The Commanding General is also "free to confer
>with the Mayor" on personnel matters "if personnel
>problems rise to the level where it impacts the
>readiness of the National Guard[.]"  Id.

Clayton, 2013 WL 1154098, at *2.

"On September 27, 2010, Clayton received a letter stating that the Director position was being reclassified from a Career Service position to an at-will, Management Supervisory Service ('MSS') position under D.C. Code § 1-609.58(a).[1] . . . On October 26, 2010, Clayton received a notification . . . that she

---

[1] D.C. Code § 1-609.58(a) provides:
>Persons currently holding appointments to positions in
>the Career Service who meet the definition of
>"management employee" as defined in § 1-614.11(5) shall
>be appointed to the Management Supervisory Service
>unless the employee declines the appointment.  Persons
>declining appointment shall have priority for
>appointment to the Career Service if a vacant position
>for which they qualify is available within the agency
>and is acceptable to the employee.  If no such vacant
>position is available, a 30-day separation notice shall
>be issued to the employee, who shall be entitled to
>severance pay in the manner provided by § 1-624.09.

D.C. Code § 1-609.58.  This provision was added to the D.C. Government Comprehensive Merit Personnel Act in June 1998.  Even though the language of the statute uses the modifier "currently," it appears that the District has previously used the process outlined in the statute to reappoint to an MSS position a management employee who was appointed to a Career Service position after 1998.  See, e.g., Final Brief for Appellees, Geleta v. Gray, 645 F.3d 408 (D.C. Cir. 2011) (No. 10-7026), 2010 WL 6368292, at *12, *23-24.  A "management employee" is "any person whose functions include responsibility for project management and supervision of staff and the achievement of the project's overall goals and objectives."  D.C. Code § 1-614.11 (emphasis added).  Thus, the Director of D.C. Government Operations -- as described in the Attorney General's letter -- is a management employee subject to D.C. Code § 1-609.58.

was being terminated without cause effective November 10, 2010." Id. at *3 (internal citations omitted).

Clayton filed suit alleging, in Count Four, that the District violated Clayton's constitutional due process rights by depriving Clayton of her protected property interest in her employment and right to seek review with the Office of Employee Appeals of any termination of her employment without due process. Id. Count Five sought a declaratory judgment that D.C. Code § 1-609.58(a) is unconstitutional on its face and as applied to Clayton. Id.

The District moved to dismiss Clayton's amended complaint. A March 21, 2013 memorandum opinion and order granted in part and denied in part the District's motion and dismissed Count Four and Clayton's facial challenge to D.C. Code § 1-609.58(a) in Count Five. Id. However, the District did not challenge Clayton's as-applied constitutional challenge to D.C. Code § 1-609.58(a) in its motion to dismiss. Id. at *8 n.12. Accordingly, the memorandum opinion and order did not consider the merits of Clayton's as-applied claim and that claim was not dismissed.

The District now moves for reconsideration of the March 21, 2013 memorandum opinion and order to the extent that it did not dismiss Clayton's as-applied challenge to D.C. Code § 1-609.58(a). The District contends that it "intended to contest *all* of the claims set forth" in Clayton's amended

complaint. Def. D.C.'s Mot. for Recons. of Court's Mar. 21, 2013 Mem. Op. & Order ("Def.'s Mot."), Def.'s Mem. in Supp. of Def.'s Mot. for Recons. ("Def.'s Mem.") at 3. However, the District admits that it

> did not understand Count V of the Amended Complaint to contain any as-applied constitutional challenge to D.C. Code § 1-609.58 that was meaningfully distinct from Clayton's claim in Count IV that the reclassification of her position to MSS "was pretextual and intended to deprive her of her due process right to her employment and any OEA appeal."

Id. (quoting Am. Compl. ¶ 106). The District asserts that its "failure to make clear that the arguments sets forth in [its motion to dismiss] were intended to address any as-applied challenge to the statute, as well as Plaintiff's direct due process claims, was inadvertent." Id. Clayton opposes, arguing that the motion for reconsideration is merely an attempt by the District to recover on a "deliberate strategic decision[] in drafting its motion and [that the District] believed that it had adequately addressed all of the claims set forth." Pl.'s Opp'n to Def. D.C.'s Mot. for Recons., Mem. of P. & A. in Supp. of Pl.'s Opp'n to Def.'s Mot. for Recons. at 6 (internal quotation marks omitted).

## DISCUSSION

The District moves for reconsideration under Federal Rule of Civil Procedure 60(b). However, Rule 54(b), and not Rule 60(b), "governs reconsideration of orders that do not constitute final

judgments in a case." <u>Cobell v. Norton</u>, 224 F.R.D. 266, 271 (D.D.C. 2004); <u>see also</u> Fed. R. Civ. P. 54(b) (providing that Rule 54(b) governs "any order or other decision . . . that adjudicates fewer than all the claims . . . of fewer than all the parties"). Here, the March 21, 2013 memorandum opinion and order granting in part and denying in part the District's motion to dismiss did not dispose of all of Clayton's claims. Thus, the District's motion will be analyzed under Rule 54(b).

Rule 54(b) provides that an interlocutory order "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). "Under Rule 54, a court may reconsider an interlocutory decision 'as justice requires.'" <u>United States ex rel. Westrick v. Second Chance Body Armor, Inc.</u>, 893 F. Supp. 2d 258, 268 (D.D.C. 2012) (quoting <u>Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.</u>, 630 F.3d 217, 227 (D.C. Cir. 2011)). The as justice requires standard "leave[s] a great deal of room for the court's discretion and, accordingly, . . . amounts to determining 'whether reconsideration is necessary under the relevant circumstances.'" <u>Judicial Watch v. Dep't of the Army</u>, 466 F. Supp. 2d 112, 123 (D.D.C. 2006) (quoting <u>Cobell</u>, 224 F.R.D. at 272). Justice may so require where the court has "'patently misunderstood the parties, made a decision beyond the adversarial issues presented, [or] made an error in failing to

consider controlling decisions or data, or [where] a controlling or significant change in the law has occurred.'" Arias v. DynCorp, 856 F. Supp. 2d 46, 51 (D.D.C. 2012) (quoting Negley v. FBI, 825 F. Supp. 2d 58, 60 (D.D.C. 2011)). "'The moving party has the burden of showing that reconsideration is warranted, and that some harm or injustice would result if reconsideration were to be denied.'" Henok v. Chase Home Fin., LLC, Civil Action No. 12-336 (RWR), 2013 WL 2352104, at *3 (D.D.C. May 30, 2013) (quoting Pueschel v. Nat'l Air Traffic Controllers' Ass'n, 606 F. Supp. 2d 82, 85 (D.D.C. 2009)).

The District does not assert that the parties were patently misunderstood or that the March 21, 2013 memorandum opinion and order made some other mistake warranting reconsideration under Rule 54(b). Instead, the District admits that Clayton's as-applied challenge was not considered because the District -- not the court -- misunderstood Count Five in Clayton's amended complaint and because the District failed to clearly argue that Clayton's as-applied challenge should be dismissed. See Def.'s Mot. at 1; see also Def.'s Reply in Further Supp. of Def.'s Mot. for Recons. at 2-3 (stating that the District's "failure [to address Clayton's as-applied challenge] was merely an inadvertent drafting error"). The District further asserts that it will "likely seek dismissal of and/or summary judgment on this claim again in the future, based at least in part on [the] same

arguments" the District made in its motion to dismiss.  See Def.'s Mem. at 4-5.  The District has not shown that it will be harmed by having to resort to future action regarding Clayton's as-applied constitutional claim, or that some injustice will result if reconsideration is denied.  Because the District has not demonstrated that reconsideration is warranted, its motion will be denied.

CONCLUSION AND ORDER

The District has not shown that justice requires reconsideration of the March 21, 2013 memorandum opinion and order.  Accordingly, it is hereby

ORDERED that the District's motion [35] for reconsideration be, and hereby is, DENIED.

SIGNED this 22nd day of August, 2013.

```
                              _____/s/_____
                              RICHARD W. ROBERTS
                              Chief Judge
```